O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MABEL I. PONCE, ) | Case No. CV 11-2380 JPR |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | REVERSING COMMISSIONER'S |
| v. ) | DECISION AND REMANDING |
| ) | FOR FURTHER PROCEEDINGS |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I.  PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB").  The parties filed a Joint Stipulation on January 3, 2012.[1]  The Court has taken the Joint Stipulation under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for

---

[1] Although the face page of the Joint Stipulation is file-stamped "E-Filed Jan 3, 2011," that was before the action was filed.  The docket sheet reflects the correct 2012 date.

further proceedings.

## II.  BACKGROUND

Plaintiff was born on August 14, 1953. (Administrative Record ("AR") 33, 106.)  She completed high school in El Salvador and speaks limited English. (AR 24, 33-34.)  Plaintiff came to the United States in 1974 and worked as a sample maker at a sewing factory until January 1, 2002. (AR 33-34.)  She has not engaged in substantial gainful activity from that date through her date last insured, March 31, 2006. (AR 34, 106.)

On March 31, 2008, Plaintiff filed an application for DIB, alleging that she had been unable to work since January 1, 2002, because of several medical problems, including foot pain, knee pain, lumbar spine disorder, rheumatoid arthritis, and fibromyalgia. (AR 17, 19, 106.)  After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge ("ALJ"). (AR 58.)  It was held on September 17, 2009, at which time Plaintiff appeared with a representative and testified on her own behalf. (AR 29-47.)  Two medical experts and a vocational expert also testified. (AR 38-46.) On November 2, 2009, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 17-25.)  On January 26, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1-3.)  This action followed.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's or ALJ's findings and decision should be upheld if they are free of legal error and are supported by substantial evidence based on the record as a whole. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The five-step evaluation process

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled

and the claim is denied. § 404.1520(a)(4)(I). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, disability is established and benefits are awarded. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work in the economy. § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's application of the five-step process

At step one, the ALJ found that Plaintiff did not engage in any substantial gainful activity from January 1, 2002, the date of the onset of her alleged disability, through March 31, 2006, her date last insured. (AR 19.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "foot pain; knee pain; lumbar spine disorder; rheumatoid arthritis and fibromyalgia." (Id.)

At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 21.) At step four, the ALJ found that through the date last insured, Plaintiff had the RFC to perform a limited range of "light work";[3] specifically, she could "lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk up to 4 hours in an 8 hour day; [ ] sit for up to 6 hours in an 8 hour day; . . . occasionally climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; and occasionally bend, stoop, or squat." (Id.); see 20 C.F.R. § 404.1567(b). The ALJ concluded that Plaintiff was unable to perform her past relevant work as a sample maker but acquired from that work transferable sewing skills. (AR 23-24.)

---

[3] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]," and which mostly involves sitting but occasionally walking and standing too. § 404.1567(a)-(b).

At step five, the ALJ found, based on the VE's testimony and application of the Medical-Vocational Guidelines, that jobs existed in significant numbers in the national economy that Plaintiff could perform. (AR 24-25.) The ALJ agreed with the VE that Plaintiff could perform the work of "sewing machine operator." (AR 25.) Accordingly, the ALJ determined that Plaintiff was not disabled. (Id.)

**V.    DISCUSSION**

Plaintiff contends the ALJ improperly (1) rejected the opinion of her treating physician, Dr. Larry Ivancich (J. Stip. 6-14), and (2) found that Plaintiff was not credible as to the severity of her impairments (id. at 14-17).

  A.   <u>Rejection of treating physician's opinion</u>

    1.   Applicable law

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

The opinions of treating physicians are generally afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was

consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record, it should be given controlling weight and should be rejected only for "clear and convincing" reasons. See Lester, 81 F.3d at 830; § 404.1527(d)(2). When a treating physician's opinion conflicts with other medical evidence, the ALJ must provide "specific and legitimate reasons" for discounting the treating doctor's opinion. Lester, 81 F.3d at 830; Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Factors relevant to the evaluation of a treating physician's opinion include the "[l]ength of the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship" between the patient and the physician. § 404.1527(d)(2)(i)-(ii).

    2.   Applicable facts

In April and May 2003, podiatric surgeon Dr. Gabriel Halperin treated Plaintiff for foot pain. (AR 167-71.) Dr. Halperin diagnosed a calcaneal heel spur and plantar fasciitis, which were treated with a series of four trigger-point injections in Plaintiff's right heel. (Id.) After Plaintiff's third injection, she reported feeling "80% better" but noted that her pain had returned when wearing tennis shoes and later decreased again. (AR 167.) At that time, Dr. Halperin noted that Plaintiff's edema had decreased, she was using her heels, and her range of movement was good. (Id.)

From July to October 2003, Plaintiff sought medical care at the Bell-Clinica Familiar medical clinic for, among other things, "fatigue syndrome" and abdominal pain. (AR 174-81.) In a February 2004

follow-up at the Bell-Clinica Familiar, Plaintiff reported right- and left-heel pain, and the doctor noted that she had "possible spurs." (AR 183.)

Between October 2004 and November 2005, podiatrist Larry Ivancich treated Plaintiff for bilateral heel pain. (AR 184.) In an undated one-paragraph letter, Dr. Ivanich summarized that treatment as follows:

> The patient was initially seen in the office on 10/06/2004 with chief complaint of pain in both heels, which she has had for [a] number of months and years duration. The patient had multiple treatments, orthotics, and injections without relief. The patient was seen with excruciating pain. The patient was seen over the course of a year multiple times and was given injections, ankle braces, nerve conduction velocity studies, and MRI preformed [sic] on the lumbar area. Physical therapy, [sic] was given, which gave her very minimal to no relief. MRI performed on 10/29/04 on her lumbar area revealed L5, S1 mild-to-moderate left neural foraminal narrowing secondary to 3 to 4 mm posterior disk bulge and facet hypertrophy. The patient has been unable to work due to severe pain in feet, legs, and esteemed [sic] permanently disabled. Upon her last visit on 11/29/05, the patient still with pain in both feet and legs with diagnosis of neuritis and pain.

(AR 184.) The record contains the October 2004 MRI report but not Dr. Ivancich's treatment records. (AR 197-98.)

On March 22, 2006, shortly before Plaintiff's March 31, 2006 date

last insured, Dr. Susman[4] noted that Plaintiff had been seeing Dr. Ivancich for foot pain for the past two years with "little results." (AR 193.) Dr. Susman ordered foot x-rays and under "Assessment" wrote "Tailors Bunion," "Neuropathy," and "(sciatica?)," among other things. (Id.) In April 2006, Dr. Susman noted that x-rays showed recurrence of spurs, a new spur, and tailor's bunion; Dr. Susman diagnosed calcaneal heel spurs and plantar fasciitis. (AR 194.)

In December 2007, almost two years after Plaintiff's date last insured, Dr. Solomon Forouzesh began treating Plaintiff for various conditions. (AR 236-96, 299-300.) His diagnoses included diffuse osteoarthritis, spinal stenosis, discogenic disease, early rheumatoid arthritis, fibromyalgia, neuropathy, gastritis, and bone spurs on both feet. (AR 278, 289, 299-300.) His diagnosis of rheumatoid arthritis was supported by laboratory reports dated December 2007 and May 2008 (AR 245, 264), and his findings of back and knee problems were supported by MRIs conducted in December 2007 and January and February 2008 (AR 249-50, 254-55, 260). In a January 2010 report, Dr. Forouzesh opined that Plaintiff was in constant, continuous pain, that she "remains totally disabled and is unable to work," and that her original disability dated to 2001. (AR 299-300.) In addition to the January 2010 summary, Dr. Forouzesh completed two impairment questionnaires that summarized Plaintiff's medical condition and opined that she was unable to work. (AR 278-85, 289-95, 299.)

At the September 17, 2009 hearing, orthopedic surgeon Arthur Brovender, a nonexamining physician, testified by phone that he had reviewed the medical evidence and concluded that on or before March

---

[4] The record does not appear to indicate Dr. Susman's first name.

31, 2006, Plaintiff could "sit for six hours with breaks; because of the complaints of foot pain and swelling pain, . . . she could stand and walk for four hours in combination of the two; she couldn't go up ropes, ladders and scaffolds; she could go up stairs and ramps occasionally; she could lift 10 pounds frequently, 20 pounds occasionally; she could bend, stoop and squat occasionally." (AR 17, 40-41.) Dr. Brovender further testified that Plaintiff's knee problems, foot problems, and heel spurs did not limit Plaintiff's ability to use foot controls because the spur injections "cured her of that." (AR 45.) Based on that testimony, the VE found that Plaintiff could perform the job of sewing machine operator. (AR 44-45.)

The ALJ attributed "great weight" to Dr. Brovender's opinion, noting that he is "a board-certified orthopedic surgeon who had the advantage of the longitudinal view of this case." (AR 23.) The ALJ found Dr. Brovender's assessment of Plaintiff's physical limitations to be "reasonably consistent with the medical record" and thus adopted them as part of the RFC. (AR 23.) The ALJ gave "little weight" to Dr. Forouzesh's assessments because they were completed over three years after Plaintiff's date last insured, and because Dr. Forouzesh did not start treating Plaintiff until almost two years after the date last insured.[5] (AR 23.) The ALJ briefly noted Dr. Ivancich's opinion that Plaintiff was "permanently disabled" as of November 2005 but concluded that

> other than this assertion, there is little evidence in the record that the claimant's conditions resulted in any significant impairment prior to the date of last insured.

---

[5] Plaintiff does not challenge the ALJ's determination that Dr. Forouzesh's opinion should be given little weight.

>Indeed, the claimant's pain appeared to be conservatively treated at this time with medications such as Robaxin and Lyrica . . . .

(AR 22.) The ALJ also adopted the VE's finding that Plaintiff could perform the occupation of sewing machine operator, concluding that Plaintiff was not disabled as of the date last insured. (AR 24-25.)

### 3. Analysis

In concluding that Plaintiff could perform the occupation of sewing machine operator, the ALJ rejected the opinion of treating physician Dr. Ivancich and credited the opinion of nonexamining physician Dr. Brovender. (AR 22-25.) Dr. Ivancich stated that between 2004 and 2005, Plaintiff suffered from neuritis and "severe pain" in her feet and legs, which was not alleviated by various forms of treatment. (AR 184.) Dr. Ivancich opined that as a result, Plaintiff was "unable to work" and "permanently disabled." (Id.) Dr. Brovender, by contrast, reviewed the medical records and opined that Plaintiff could perform limited light work, finding that she could use foot controls because her foot pain was "cured" after the 2003 trigger injections. (AR 40-41, 44-45.)

The ALJ's rejection of Dr. Ivancich's findings and opinion did not reach the level of specificity required to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."). The ALJ provided two reasons for rejecting Dr. Ivancich's conclusion that Plaintiff was "permanently

disabled": (1) "little evidence" supported it and (2) her pain was being treated "conservatively" with "medications such as Robaxin and Lyrica." (AR 22.) In rejecting the findings of Dr. Ivancich, the ALJ accorded "great weight" to the findings of Dr. Brovender, who did not examine Plaintiff.

The ALJ's first reason was not legally sufficient. In fact, more than a "little" evidence supported Dr. Ivancich's findings. The October 2004 MRI report showed mild to moderate left neural foraminal narrowing secondary to 3-4 mm posterior disc bulge and facet joint hypertrophy. (AR 198.) In addition, Dr. Ivancich stated that Plaintiff suffered from neuritis and "severe pain in feet, legs," which was treated with orthotics, injections, and physical therapy. (AR 184.) Dr. Susman also noted that Plaintiff had been seeing Dr. Ivancich for two years for foot pain with "little results." (AR 193.) Dr. Susman ordered x-rays, which showed a tailors bunion and heel spurs. (AR 193-94.) Dr. Susman's assessment included neuropathy, tailors bunion, plantar fasciitis, and calcaneal heel spurs. (Id.) The ALJ did not adequately explain, as he was required to do, why that medical evidence supported his view rather than Dr. Ivancich's. Embrey, 849 F.2d at 421; see McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejection of treating physician's opinion on ground that it was contrary to clinical findings in record did not "specify why the ALJ felt the treating physician's opinion was flawed"); see also Reddick, 157 F.3d at 725 (explaining that ALJ can meet requisite standard for rejecting treating physician's opinion deemed inconsistent with or unsupported by medical evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

12

making findings"). Indeed, for the most part, the ALJ focused on explaining why the medical evidence from years <u>after</u> Plaintiff's date of last insured was not particularly relevant (AR 20, 22-23), a finding that Plaintiff does not really dispute.

Moreover, the generalized reasons the ALJ provided to accord "great weight" to Dr. Brovender's opinion – consistency with the record and his area of specialization – also applied to Dr. Ivancich's opinion. Dr. Ivancich's findings of foot pain and neuropathy generally agreed with those of the other treating doctors, Drs. Susman and Forouzesh, and Dr. Ivancich specialized in podiatry. Those factors indicate that Dr. Ivancich's opinion was entitled to extra weight. <u>See</u> 20 C.F.R. § 404.1527(d)(4)-(5). Dr. Brovender, meanwhile, never examined Plaintiff but based his opinion solely on the medical records, and the ALJ determined that his findings were only "reasonably consistent" with that record. (AR 23.) Thus, his opinion should be given less weight than Dr. Ivancich's. <u>See</u> <u>Lester</u>, 81 F.3d at 830; § 404.1527(d)(1)-(2).

Further, a nonexamining doctor's opinion cannot by itself constitute substantial evidence and therefore cannot be the sole basis for rejecting a treating doctor's opinion. <u>Lester</u>, 81 F.3d at 831; <u>see also</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1454 (9th Cir. 1984). The only other reason the ALJ provided for rejecting Dr. Ivancich's opinion was that before the date last insured Plaintiff's pain was being treated conservatively, with medication. (AR 22.) But the evidence shows that in addition to the medication prescribed by Dr. Susman in 2006 (AR 193), Dr. Halperin treated Plaintiff with a series of trigger injections in 2003 (AR 167-71) and Dr. Ivancich treated her with

orthotics, injections, and physical therapy from October 2004 to November 2005 (AR 184). Dr. Ivancich also noted that despite those treatments, Plaintiff continued to suffer severe pain in her feet and legs. (AR 184.) Thus, the ALJ erred by rejecting the treating doctor's opinion based on the erroneous conclusion that Plaintiff was conservatively treated, with medication only. Cf. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ permissibly rejected treating doctor's conclusion that claimant was disabled when it conflicted with, among other things, the doctor's prescribed "conservative course of treatment").

The Commissioner argues that the ALJ "reasonably assessed Plaintiff's [RFC] to reasonably account for her foot impairment and gave valid rationale for rejecting Dr. Ivancich's assertion that Plaintiff was 'permanently disabled.'" (J. Stip. 12.) The Commissioner is correct that the ALJ explained his ultimate finding of nondisability; but as discussed above, that explanation did not include sufficient reasons for rejecting Dr. Ivancich's opinion. Compare 20 C.F.R. § 404.1527(e)(1) (determination of disability is an issue reserved to Commissioner), with § 404.1527(d)(2) (Commissioner will "always give good reasons" for the weight given to treating source's opinion). As the Commissioner points out, when rejecting a treating physician's opinion, the ALJ "must give good reasons that are supported by substantial evidence." (J. Stip. 11.) Accord Embrey, 849 F.2d at 421. The ALJ erred by failing to do so here.

The Commissioner offers additional reasons why the ALJ did not err in rejecting Dr. Ivancich's opinion (J. Stip. 12-14), but the ALJ did not articulate any of those reasons. They therefore cannot support the ALJ's evaluation. See Connett v. Barnhart, 340 F.3d 871,

874 (9th Cir. 2003) (error for district court to affirm ALJ's credibility decision "based on evidence [ALJ] did not discuss" and "specific facts or reasons" ALJ did not assert).

The ALJ's failure to adequately discuss his reasons for rejecting Dr. Ivancich's opinion was not harmless. Harmless error has been found "when it was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citing Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "[T]he relevant inquiry is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error." Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1163 (9th Cir. 2008). Here, the VE's finding that Plaintiff could perform the job of sewing machine operator was based on Dr. Brovender's statement that the 2003 injections had alleviated Plaintiff's foot problems and that her knee and foot problems would not interfere with her ability to manipulate foot controls. (AR 44-45.) If fully credited, however, Dr. Ivancich's opinion supports the conclusion that Plaintiff continued to suffer from foot problems in 2004 and 2005, long after the 2003 injections. (AR 184.) Based on that opinion, a reasonable ALJ could have rejected the VE's finding that Plaintiff could perform the job of sewing machine operator. No alternative occupations were discussed. (AR 24-25.) By rejecting Dr. Ivancich's opinion without sufficient justification, therefore, the ALJ committed an error that was not "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885.

Accordingly, the ALJ erred by rejecting Dr. Ivancich's opinion without providing specific, legitimate reasons for doing so.

B.  <u>Adverse credibility determination</u>

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discredit her subjective symptom testimony. (J. Stip. 14-16.) Because the Court finds that the ALJ's rejection of Dr. Ivancich's opinion was in error, it is not necessary for it to address the remainder of Plaintiff's arguments. See <u>Negrette v. Astrue</u>, No. EDCV 08-0737 RNB, 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and lay-witness testimony). On remand, the ALJ will necessarily reevaluate Plaintiff's credibility and RFC after reconsidering the treating doctor's opinion.

## VI. CONCLUSION

When there exists error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>INS v. Ventura</u>, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotations omitted); <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004). Remand for further proceedings is appropriate "if enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); see <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000) (explaining that "decision whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for the payment of benefits is appropriate when no useful purpose would be served by further administrative proceedings and the record has been fully developed, <u>Lester</u>, 81 F.3d at 834, or when remand would unnecessarily delay the receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985).

Courts may "credit as true" the opinions of treating physicians when "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman, 211 F.3d at 1178 (citations and quotations omitted); see Benecke, 379 F.3d at 594; Connett, 340 F.3d at 876 (recognizing that courts "have some flexibility in applying the 'credit as true'" rule).

Because the ALJ did not properly weigh and address Dr. Ivancich's opinion, outstanding issues must be resolved before a determination of disability can be made. Harman, 211 F.3d at 1178.

### ORDER

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 26, 2012

JEAN P. ROSENBLUTH
U.S. Magistrate Judge